UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KHALIFAH E.D. SAIF'ULLAH,<br><br>Plaintiff,<br><br>v.<br><br>JIMMY CRUZEN, et al.,<br><br>Defendants. | Case No. 15-CV-01739 LHK (PR)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 44 |

Plaintiff Khalifah E.D. Saif'ullah, a California state prisoner proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983. On May 9, 2017, defendants filed a motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons stated below, defendants' motion is granted.

## BACKGROUND

The following facts are taken in the light most favorable to plaintiff.

At the time of the challenged events, plaintiff was a practicing Muslim housed in the West Block at San Quentin State Prison ("SQSP"). Dkt. No. 1 ("Compl.") ¶¶ 11, 14. According to plaintiff's Islamic religious beliefs, plaintiff is required to pray five times a day at specified times,

and plaintiff believes that he receives 25-27 times more blessings during congregational prayer than during individual prayer.  *Id.* ¶¶ 12-13.  Plaintiff believes that a Muslim is obligated to participate in congregational prayer whenever feasible.  *Id.* ¶ 24.  SQSP had a rule that prohibited the SQSP Muslim prisoners from offering congregational prayer in groups of more than four prisoners at a time.  *Id.* ¶ 15.

On September 22, 2013, a non-defendant correctional sergeant prohibited Muslim prisoners from offering congregational prayer during "open dayroom"[1] of more than four prisoners, even though a group of approximately 25 Christian prisoners were offering congregational prayer without interruption.  *Id.* ¶ 16.  Plaintiff and other prisoners filed a group inmate grievance, challenging this rule that prohibited congregational prayer of more than four prisoners at one time.  *Id.* ¶ 17 and Ex. A.  On May 14, 2014, SQSP's Religious Review Committee ("RRC") met to discuss the issues raised in the group grievance.  *Id.* ¶ 19.  As a result, the RRC decided to permit Muslim prisoners to participate in congregational prayer of no more than 15 prisoners at a time.  *Id.*  On May 15, 2014, a memorandum was drafted memorializing the discussions in the meeting.  *Id.*, Ex. B.  On June 3, 2014, Associate Warden S.R. Albritton issued a religious accommodations modification order specifically stating that the following accommodations were authorized:  (1) faith prayer will be allowed to occur in West Block during the evening activity program, approximately at sunset; (2) no more than 15 individuals would be allowed to participate in the sessions; and (3) prayer would last no longer than 6 to 8 minutes.  Opp., Ex. B.  The modification order also stated, "management staff, as discussed with the appellant of this request, reserves the discretion to make adjustments to these accommodations as safety and security dictates."  *Id.*

On June 28, 2014, the first day of Ramadan, Muslim prisoners started offering evening

---

[1] Plaintiff defines "open dayroom" as being from 12:30 p.m. through 3:45 p.m., and again from 7:30 p.m. through 9:00 p.m., and is a time "where all prisoners are allowed to mingle, congregate, play congregational table top games, cards, dominoes, shower, etc."  Compl. ¶ 16.

congregational prayer in groups of fifteen.  Compl. ¶ 20.[2]  They continued their evening

congregational prayers every day thereafter without any interruptions until July 25, 2014.  *Id.* at ¶

20.  On July 25, 2014, defendants Correctional Sergeant Jimmy Cruzen, Correctional Officer C.

Caldera, Correctional Officer R. Christensen, and Correctional Officer David Ogle interrupted the

congregational prayer and surrounded the Muslim prisoners who were praying.[3]  *Id.* ¶ 21.  Cruzen

directed the Muslim prisoners to stop praying.  *Id.*

Plaintiff asked Cruzen what the problem was, and informed Cruzen that Muslim prisoners

had been given permission to perform congregational prayer in groups of up to fifteen prisoners.

*Id.* ¶ 22.  Cruzen informed the Muslim prisoners that they were "grouping up," and were not

allowed to be in a group of more than four inmates at a time.  *Id.*  Cruzen further stated that the

appeal had been rescinded.  *Id.*  Plaintiff told Cruzen about the RRC meeting and the resulting June

3, 2014 modification order allowing Muslims prisoners to perform congregational prayer of up to

fifteen people.  *Id.*  Cruzen responded that he had not seen such an authorization.  *Id.*  Plaintiff

stated that he had previously given a copy to Ogle.  *Id.*  After presenting Cruzen with a copy of the

June 3, 2014 order, Cruzen responded that the appeal was granted but then denied.  *Id.*  Cruzen

further stated, "it ain't going down, you guys need to get out of here."  *Id.*  Defendants placed their

hands on their batons in a threatening manner as Cruzen instructed the Muslim prisoners to "get

out of here."  *Id.*  Plaintiff asserts that there is a small window of time within which to perform the

evening congregational prayer.  *Id.* ¶ 25.  The time plaintiff spent trying to persuade defendants

that the Muslim prisoners were allowed to congregate in groups of up to fifteen caused plaintiff to

miss the congregational evening prayer on July 25, 2014.  *Id.*  On July 26, 2014, plaintiff

---

[2] The court notes that plaintiff offers a contradictory statement in which he states that in February 2013, plaintiff began offering congregational prayer with other Muslim prisoners in groups of fifteen to thirty Muslim prisoners in West Block.  Compl. ¶ 14; Opp. at 7.

[3] In plaintiff's administrative grievance, plaintiff stated that defendants interrupted the Muslim prisoners' evening congregational prayer around 7:35 p.m.  Compl. Ex. C.  However, in plaintiff's opposition, plaintiff asserts that "7:35 p.m." was a typographical error, and instead, plaintiff meant "8:35 p.m."  Opp. at 15.

submitted an emergency grievance regarding defendants' actions.  *Id.* ¶ 26b.  On July 28, 2014, non-defendant Appeals Coordinator Lieutenant Davis verbally granted plaintiff's appeal, and informed all West Block staff that plaintiff and the Muslim prisoners were authorized to offer congregational prayer in groups of up to fifteen at a time.  *Id.*

Plaintiff alleges that defendants violated the First Amendment Free Exercise Clause, First Amendment Establishment Clause, First Amendment right against retaliation, Fourteenth Amendment right to equal protection, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

**ANALYSIS**

I.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

Case No. 15-CV-01739 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

material facts, and "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## II.    Evidence considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of defendants' motion for summary judgment, defendants have properly submitted declarations and supporting exhibits.

Plaintiff has filed a complaint, and an opposition with supporting exhibits. A complaint may be used as an opposing affidavit under Rule 56, if it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, plaintiff's complaint and opposition were filed in conformity with 28 U.S.C. § 1746. Therefore, the court will consider plaintiff's complaint, opposition, and supporting exhibits as evidence.

## III.    Free Exercise

Plaintiff alleges that defendants' actions on July 25, 2014 violated his First Amendment

right to the free exercise of his religion. Defendants argue that the impact on plaintiff's right to the free exercise of his religion did not result in a substantial burden. Even if it did, argue defendants, their actions were reasonably related to legitimate penological interests. And, finally, in the alternative, defendants argue that they are entitled to qualified immunity. The court addresses each argument in turn.

A.    Substantial burden

In order to establish a free exercise violation, a prisoner must show that a defendant substantially burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008); *see, e.g.*, *Bolds v. Cavazos*, No. 14-15176, 599 Fed. Appx. 307 (9th Cir. March 20, 2015) (unpublished memorandum disposition) (dismissing Free Exercise Clause claim because inmate failed to show that confiscation of television "substantially burdened" the practice of religion). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015).

The evidence is undisputed that defendants interrupted and stopped plaintiff from completing one evening congregational prayer session on July 25, 2014. Plaintiff alleges for the first time in his opposition that defendants refused to allow plaintiff to offer congregational evening prayer on the following two nights as well. Opp. at 6. "Plaintiff was not able to continuing offering congregational Maghrib prayer until three days later." *Id.* at 8. Plaintiff asserts that defendants prevented plaintiff from offering prayer for three days and did not authorize plaintiff to offer prayer in groups of four. *Id.* at 9.

These newly presented facts are untimely. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("[A] new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of

liability.") (citations omitted).  The court's obligation to read the pleadings liberally in *pro se* cases extends to facts actually contained in the pleadings and does not grant a *pro se* plaintiff free rein to raise new facts and theories in his opposition.

Although the court must construe pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, 925 (9th Cir. 2012), which in this case means requiring plaintiff to properly plead factual allegations.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to allow the plaintiff to advance new theories "presented for the first time in [the plaintiff's] opposition to summary judgment"); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (internal quotations omitted); *Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1082 (E.D. Cal. 2010) ("[A] plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with a new legal issue after the bulk of discovery has likely been completed.").

In this case, the allegation that defendants somehow prevented plaintiff from engaging in evening congregational prayer the following two nights appeared for the first time in plaintiff's opposition to summary judgment.  Not only did plaintiff fail to plead these new facts in his complaint, but the court finds that there is no evidence that defendants prevented plaintiff from engaging in evening congregational prayer on July 26, 2014 or July 27, 2014.  In fact, plaintiff submitted contradictory evidence that on August 5, 2014, during plaintiff's interview for his administrative grievance, plaintiff conceded that the interruption did not occur again before or after July 25, 2014, and that "it only happened once."  Compl. Ex. C.  Thus, the court will not consider plaintiff's new allegations that defendants prevented plaintiff from evening congregational prayer on July 26 and 27, 2014.

Plaintiff has declared that he sincerely believes that as a Muslim, he is obligated to pray in

congregation as often as possible, and that praying in congregation results in 25-27 times more blessings than praying alone. Plaintiff concedes that prior to defendants' actions on July 25, 2014, Muslim prisoners had engaged in congregational evening prayer every day for 26 consecutive days without incident. Compl. ¶ 20. If a Muslim misses a prayer, he must repent and atone for missing the prayer and make up for the missed prayer to fulfill his obligation. Hossain Decl. ¶ 5. Here, there is no evidence that defendants prevented plaintiff from making up the prayer by praying individually or in a smaller congregation.

The court finds that there is an absence of evidence that defendants' actions on July 25, 2014 was a "substantial burden" on plaintiff's free exercise of religion such that it coerced plaintiff to forego his religious beliefs, or engage in conduct that violated those beliefs. *See Jones*, 791 F.3d at 1031-32; *see, e.g.*, *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (affirming summary judgment on claim that defendant violated Free Exercise Clause by interrupting inmate's prayer time no more than 18 times over the course of 2 months because it was "relatively short-term and sporadic," and not a "substantial burden"); *Howard v. Skolnik*, Case No. 09-15382, 2010 WL 1253458, **1 (9th Cir. March 30, 2010) (unpublished memorandum disposition) (affirming summary judgment on "First Amendment claim concerning two alleged incidents where prison personnel interfered with prisoner's fasting because there was no genuine issue as to whether a substantial burden was placed on Howard's free exercise of religion"); *Chaparro v. Ducart*, Case No. 14-CV-4955 LHK, 2016 WL 491635, at *5 (N.D. Cal. Feb. 9, 2016) (granting defendants' motion for summary judgment because four missed chapel services did not amount to a substantial burden on plaintiff's right to the free exercise of religion), *aff'd by* Case No. 16-15693 (9th Cir. Aug. 9, 2017) (unpublished memorandum disposition).

Accordingly, defendants are entitled to summary judgment because there is no genuine issue of material fact that the one-time prohibition of engaging in evening congregational prayer was not a substantial burden on plaintiff's free exercise of religion.

    B.    Reasonably related to legitimate penological interests

    Alternatively, even if defendants' actions on July 25, 2014, substantially burdened

Case No. 15-CV-01739 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

plaintiff's free exercise of religion, defendants are still entitled to summary judgment because there is no genuine issue of material fact that their actions were reasonably related to legitimate penological interests at SQSP. A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Allegations of a denial of an opportunity to practice religion "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) (citing *Turner*, 482 U.S. at 89-90); *see Beard v. Banks*, 548 U.S. 521, 532-33 (2006) (noting that application of the *Turner* factors does not turn on balancing the factors, but on determining whether the defendants show a reasonable relation, as opposed to merely a logical relation).

### 1. Valid, rational connection

First, defendants assert that there was a valid, rational connection between Cruzen's order for the Muslim prisoners to disperse, and a legitimate governmental interest. Legitimate penological interests include "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974) (footnote omitted), *limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989). In determining whether there is a valid, rational connection to legitimate penological interests, the initial burden is on defendants to put forth a "common sense" or intuitive connection between their policy and a legitimate penological interest. *See Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999). When an inmate does not present enough evidence to refute this common sense connection between the prison regulation and the objective, the court is to presume the governmental objective is legitimate and neutral and *Turner*'s first prong is

satisfied. *See Ashker v. California Dept. of Corrections*, 350 F.3d 917, 923-24 (9th Cir. 2003); *Frost*, 197 F.3d at 357. On the other hand, when an inmate presents evidence that refutes a common sense connection between a legitimate objective and the prison regulation, the state then must present enough counter-evidence to show that the connection is not so "remote as to render the policy arbitrary or irrational." *Ashker*, 350 F.3d at 923; *Frost*, 197 F.3d at 357.

Cruzen stated that on July 25, 2014, Cruzen heard a loud noise on the first tier, and went to investigate it. Cruzen Decl. ¶ 3. Cruzen noticed 12-15 inmates grouped together, and asked the other defendants to assist Cruzen in breaking up the group. *Id.* ¶ 4. Cruzen believed the group needed to disperse because they were being disruptive, blocked traffic flow and accessibility to showers and tables on the first tier, and appeared to be "posting security." *Id.* ¶ 8. "Posting security" refers to a situation when prisoners are standing nearby and keeping watch, which is not permitted for security reasons because "posting security" usually indicates ongoing criminal activity. *Id.*

Cruzen's explanation is legitimate and passes the "common sense" standard. *See Frost*, 197 F.3d at 357. The logical connection between Cruzen's action and the stated policy reasons is not so remote as to render it arbitrary or irrational. *See Turner*, 482 U.S. at 89-90. In sum, defendants have shown that a "common sense" connection between their actions in stopping the July 25, 2014 evening congregational prayer and their stated legitimate penological interests was reasonable. *See Frost*, 197 F.3d at 355 ("[A]s long as it is plausible that prison officials believed the policy would further a legitimate objective, the governmental defendant should prevail on *Turner*'s first prong.").

In response, plaintiff does not provide any evidence to refute this common sense connection. Plaintiff makes a blanket statement that defendants' declarations are "lies" and that defendants stopped the July 25, 2014 congregational prayer out of "hatred for the Muslims" and "religious discrimination and retaliation." Opp. at 7, 9. These statements are not evidence that refute the "common sense" connection proffered by defendants. *See Mauro*, 188 F.3d at 1060 (stating that defendants' initial burden of showing a "common sense" connection need only

United States District Court
Northern District of California

demonstrate that "defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests").

Having found that plaintiff has not produced sufficient evidence to refute defendants' stated "common sense" connection, the court finds that defendants have satisfied the first *Turner* prong.

## 2. Alternative Means

Under the second *Turner* factor – the availability of alternatives – "[t]he relevant inquiry . . . is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, [the court must] determine whether the inmates have been denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987)). "Also relevant to the evaluation of the second factor is a distinction *O'Lone* had no occasion to make: the distinction between a religious practice which is a positive expression of belief and a religious commandment which the believer may not violate at peril of his [or her] soul." *Ward*, 1 F.3d at 878; *compare id.* (concluding that where prison officials have deprived an Orthodox Jewish prisoner of a kosher diet, a rabbi, and religious services, the second *Turner* factor weighs in the prisoner's favor), *with id.* at 880 (concluding that a prisoner's request not to be transported on the Sabbath was not reasonable under second *Turner* factor because prisoner had many opportunities to observe the Sabbath).

Defendants argue that plaintiff had alternative means of religious expression. The evidence is undisputed that whether the interruption was at 7:35 p.m. or 8:35 p.m. on July 25, 2014, the window for evening prayer that day concluded at 9:32 p.m. Hossain Decl. ¶ 4. Despite plaintiff's assertion to the contrary, there is no evidence that plaintiff was prevented from engaging in congregational prayer in a smaller group, much less that defendants were the cause of plaintiff's inability to perform congregational prayer in a group of four. Further, plaintiff does not dispute that he could not pray individually in his cell prior to 9:32 p.m. In addition, defendants provide evidence that on July 25, 2014, Muslim Chaplain Hossain sponsored a special Ramadan

Program at the chapel from 5:30 p.m. to 8:30 p.m. to which all inmates were invited to participate. Hossain Decl. ¶ 3.  Plaintiff regularly attended prayer services at the Muslim chapel before and after July 25, 2014.  *Id.* ¶ 6.

Thus, there are no genuine issues in dispute regarding whether plaintiff had an alternative means of religious expression, nor is there any evidence which shows plaintiff was "denied all means of religious expression."  *Ward*, 1 F.3d at 877; *see also O'Lone*, 482 U.S. at 352 (holding that the second *Turner* factor is satisfied if a prison allows prayer and discussion, access to an imam, and observance of Ramadan, even if inmates could not attend a weekly religious service).  In addition, there is no evidence in the record to suggest that plaintiff's failure to engage in one evening congregational prayer is "forbidden" by Islam, or that engaging in evening congregational prayer is a religious commandment.  *See Ward*, 1 F.3d at 878.  Plaintiff merely states that he receives more blessings in congregational prayer than in individual prayer and that he is obligated to pray in congregation as often as feasible.  However, there is no evidence that congregational prayer is a requirement, or that the failure to do so is forbidden.  *See id.* ("It is one thing to curtail various ways of expressing belief, for which alternative ways of expressing belief may be found.  It is another thing to require a believer to defile himself, according to the believer's conscience, by doing something that is completely forbidden by the believer's religion.").  Thus, the second *Turner* factor weighs in favor of defendants.

### 3.    Impact on Others

"A third consideration [to determine whether a challenged policy is reasonable] is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  "When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."  Here, however, defendants are silent on any assessment regarding the impact that an accommodation would have on the prison.  *See Shakur v. Schiro*, 514 F.3d 878, 887 (9th Cir. 2008) (noting that in order to prevail on the third *Turner* factor, the prison should provide

evidence that the prison actually looked into or studied the effects that an accommodation would have on operating expenses). Thus, this third *Turner* factor does not support a reasonable relation between the defendants' curtailment of the July 25, 2014 evening congregational prayer and legitimate penological interests.

### 4. Presence of ready alternatives

Under the fourth and final *Turner* factor, whether the regulation is an "exaggerated response" to the prison's concerns, the prisoner must show there are "obvious, easy alternatives" to the regulation that "fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 90-91. The burden is on the plaintiff to show that there are obvious and easy alternatives to the challenged policy. *See Mauro*, 188 F.3d at 1061; *Turner*, 482 U.S. at 90-91 ("if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."). "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 91. Instead, the proper inquiry is "whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." *Overton v. Bazzetta*, 539 U.S. 126, 135-36 (2003).

Plaintiff does not suggest an obvious or easy alternative to defendants' actions. The undisputed evidence shows that defendants instructed plaintiff and the other Muslim prisoners to disperse because prison security concerns prevented large group gatherings, and it appeared that the Muslim prisoners were "posting security." Plaintiff has not shown or argued that there existed an alternative with de minimis costs to valid penological interests. Thus, the fourth *Turner* factor weighs in favor of defendants.

In addition, the test of whether the defendants' actions were reasonably related to a legitimate penological interest does not require "balancing these [*Turner*] factors, but rather

determining whether [defendants show] more than simply a logical relation, that is, whether [they show] a reasonable relation." *Beard*, 548 U.S. at 533. Considering the *Turner* factors here, the court concludes that defendants' curtailment of the July 25, 2014 evening congregational prayer was reasonably related to legitimate penological interests.

Plaintiff has not provided any evidence to show that defendants' act of requiring Muslim prisoners to disperse from the July 25, 2014 evening congregation prayer was unreasonable. Because plaintiff has failed to provide sufficient evidence of a First Amendment violation for a reasonable jury to return a verdict in his favor, defendants' motion for summary judgment is granted.

C.     Qualified immunity

Defendants also argue that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Regarding the first prong, the threshold question must be, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

Here, the law was clearly established that a prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See*

*O'Lone v. Estate of Shabazz*, 482 U.S. at 349. "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citations omitted). "[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Moreover, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). To do so, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the total factual circumstances surrounding the alleged violation. *See Watkins v. City of Oakland, California*, 145 F.3d 1087, 1092-93 (9th Cir. 1998). Such specificity does not mean qualified immunity exists "unless the very action in question has previously been held unlawful," but does require that "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

With these principles in mind, the constitutional question to be addressed here is not the general proposition espoused in *O'Lone*, but a more narrow one: whether a Muslim prisoner's right to free exercise is denied when he is prohibited one time from engaging in evening congregational prayer. *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997) (recognizing *O'Lone* as establishing that prisoners retained protections of the free exercise clause, but defining the right as whether the prison's hair search procedure violated prisoners' right to free exercise of religion).

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *See Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). Here, plaintiff has not done so.

The court has conducted a search for cases discussing whether prison officials violate the Free Exercise Clause when they prohibit inmates from engaging in one evening congregational prayer, and found no applicable United States Supreme Court or Ninth Circuit cases. *See*

*Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court may look to all available decisional law, including the law of other circuits and district courts. *See id.*; *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015) (only in absence of decisional authority by the U.S. Supreme Court or Ninth Circuit are other sources of decisional law, such as out-of-circuit cases, considered). Though there are a handful of out-of-circuit cases that have found total bans of congregational prayers to be unconstitutional, the court has not uncovered any cases that have found a temporary or sporadic deprivation to be unconstitutional. *See, e.g.*, *Williams v. Bragg*, No. EP-11-CV-475-PRM, 2012 WL 12878177, at *6-*7 (W.D. Tex. Aug. 31, 2012) (granting summary judgment to defendants and concluding that two isolated incidents, which generally do not support a First Amendment claim, of cancelling Al-Jumu'ah congregational prayer did not violate plaintiff's free exercise claim), *aff'd by* No. 12-50965, 537 Fed. Appx. 468 (5th Cir. July 29, 2013) (unpublished memorandum disposition); *Williams v. Jabe*, No. 7:08cv00061, 2008 WL 5427766, at *3 (W.D. Va. Dec. 31, 2008) (granting summary judgment to defendants and concluding that denying Muslim prisoners congregational prayer after Ramadan evening meals did not violate plaintiff's right to free exercise), *aff'd by* No. 09-6099, 339 Fed. Appx. 317 (4th Cir. July 29, 2009) (unpublished memorandum disposition); *Muhammad v. Klotz*, 36 F. Supp. 2d 240, 245 (E.D. Pa. Jan. 28, 1999) (granting summary judgment to defendants and concluding that denying Muslim prisoners the ability to engage in all congregational prayers except one daily evening congregational prayer did not violate plaintiff's right to free exercise).

Based on the lack of clear case law establishing that the Free Exercise Clause prohibits prison officials from stopping one evening congregational prayer, the court concludes that plaintiff's First Amendment right was not clearly established here.

In addition, whether a reasonable official could have believed the action taken was lawful is a mixed question of law and fact: "It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took."

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).  Here, the record shows that defendants observed a large group of prisoners who looked like they were "posting security," which is prohibited as a security concern.  Because the law was not clearly established, and the evidence is undisputed that defendants believed the large group of prisoners gathering was a security concern, a reasonable officer could have believed that defendants' actions were lawful.

In sum, because plaintiff's right to free exercise was not clearly established in this situation, the court concludes that a reasonable official in defendants' positions would not have believed that prohibiting plaintiff in one instance of engaging in evening congregational prayer would be unlawful.

Defendants' motion for summary judgment on plaintiff's free exercise to religion claim is GRANTED.

IV.    Establishment Clause

Plaintiff alleges that defendants' actions on July 25, 2014 violated the Establishment Clause.  Defendants argue that plaintiff has not alleged facts to support an Establishment Clause claim.

The U.S. Supreme Court has interpreted the Establishment Clause to mean that the government may not promote or affiliate itself with any religious doctrine or organization and may not discriminate among persons on the basis of their religious beliefs and practices.  *See County of Allegheny v. ACLU*, 492 U.S. 573, 590 (1989), *abrogated on other grounds by Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014).  For the purpose of an Establishment Clause violation, a state policy need not be formal, written or approved by an official body to qualify as state sponsorship of religion; however, the actions complained of must be sufficiently imbued with the state's authority to constitute state endorsement of religion.  *See Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998) (correctional officer's evangelizing activities did not constitute state endorsement of religion because activities were not sanctioned in any way by policy of correctional facility or staff and were short-term and sporadic).  A state regulation or practice

"does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir. 1981) (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)).

The Establishment Clause of the First Amendment "prohibits the enactment of a law or official policy that 'establishes a religion or religious faith, or tends to do so.'" *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). The clause applies to official condonement of a particular religion or religious belief, and to official disapproval or hostility towards religion. *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120-21 (9th Cir. 2002) (quotation marks and citations omitted).

Here, plaintiff argues that the policy at issue is the rule requiring "only Muslim prisoners to adhere to the no more than four prisoners in a group." Opp. at 2. However, plaintiff challenged the "grouping" policy in 2013 through the administrative grievance process, and won. The successful grievance resulted in the June 3, 2014 modification order permitting a group of up to 15 Muslim prisoners to perform evening congregational prayer.

The evidence is undisputed that soon after defendants dispersed the evening congregational prayer, defendants were informed that the June 3, 2014 modification order permitted Muslim prisoners to engage in congregational prayer of up to 15 prisoners, and plaintiff continued to participate in evening congregational prayers again on July 28, 2014. This evidence leads to the inference that the State in fact did not endorse or ratify defendants' actions on July 25, 2014. There is also no evidence that defendants had the authority to create policy. *See id.* In fact, plaintiff does not suggest that defendants were acting pursuant to any official policy or custom of the facility.

In *Canell*, the Ninth Circuit affirmed a district court's grant of summary judgment of a prisoner's Establishment Clause claim when the prisoner alleged that over a two-month period, a correctional officer attempted to convert the prisoner to the Christian faith. *Canell*, 143 F.3d at

1211.  The correctional officer engaged in religious debate with the inmates, performed mock preaching, sang Christian songs, and often brought the Bible to work and placed it in view of the inmates.  *Id.* at 1211-12.  The Ninth Circuit agreed with the district court's determination that because the correctional officer's actions "were sporadic, of short duration, and ceased when he no longer supervised [plaintiff]," the correctional officer was entitled to summary judgment.  *Id.* at 1212.

Similarly here, there is no evidence that defendants' actions were sanctioned by an official policy of the prison.  Defendants' interaction with plaintiff occurred over a matter of minutes, as opposed to the correctional officer in *Canell*.  Shortly after plaintiff complained about defendants' order to the Muslim prisoners to disperse, prison staff clarified for defendants that the June 3, 2014 accommodation order was valid, and Muslim prisoners continued their evening congregational praying on July 28, 2014.  Under these circumstances, there is an absence of evidence that defendants' activities were "imbued with the state's authority to constitute state endorsement of religion."  *Id.* at 1214.

Accordingly, defendants' motion for summary judgment is GRANTED as to plaintiff's Establishment Clause claim.

V.      Retaliation

Plaintiff claims that defendants' actions on July 25, 2014 amounted to retaliation against plaintiff.  Specifically, plaintiff asserts that defendants took an adverse action against plaintiff when they ordered plaintiff to stop engaging in congregational prayer.  Plaintiff claims that defendants did so because plaintiff had participated in a group appeal in 2013 that resulted in the June 3, 2014 modification order; that defendants' actions chilled plaintiff's rights; and defendants' actions did not reasonably advance a legitimate correctional goal.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The court finds that plaintiff has not demonstrated a genuine issue of material fact as to whether defendants acted because of plaintiff's protected conduct, and as to whether defendants' actions reasonably advanced a legitimate correctional goal.

First, there is an absence of evidence that defendants took an adverse action "because" of plaintiff's protected conduct. The element of causation requires a showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016). That is, plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [defendants'] intent" in requiring the Muslim prisoners to stop the evening congregational prayer. *Id.* at 689 (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)); *see Hartman v. Moore*, 547 U.S. 250, 259 (2006) (explaining that a section 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action").

Evidence probative of retaliatory animus includes proximity in time between the protected conduct and the alleged adverse action, a prison official's expressed opposition to the speech, and that a prison official's proffered reason for the adverse action was false or pretextual. *See id.* at 690. On the other hand, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Here, plaintiff alleges that defendants stopped the Muslim prisoners from their evening congregational prayer because plaintiff and the Muslim prisoners had grieved about being stopped from prayer in September 2013, and were granted the June 3, 2014 modification order allowing them to pray in congregation of up to 15 prisoners. Plaintiff conceded that after the June 3, 2014

1    modification order issued, no one interrupted their evening congregational prayers for at least 26

2    consecutive nights.

3          Even if plaintiff has established temporal proximity, retaliation is not established simply by

4    showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus

5    between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation

6    claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore

7    because of this"). In addition, there is no evidence that any defendant expressed opposition to

8    plaintiff's protected activity, or that defendants' reasons for stopping the evening congregational

9    prayer on July 25, 2014 were false or pretextual. That is, plaintiff has not provided any evidence

10   outside of temporal proximity. This is insufficient to show a causal connection. *See, e.g.*, *Tuttle v.*

11   *Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal

12   proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim.");

13   *Friedman v. Kennard*, No. 07-4116, 2007 WL 2807861, at **4 (10th Cir. Sept. 25, 2007)

14   ("Standing alone and without supporting factual allegations, temporal proximity between an

15   alleged exercise of one's right of access to the courts and some form of jailhouse discipline does

16   not constitute sufficient circumstantial proof of retaliatory motive to state a claim."). There is

17   simply no evidence from which it can be inferred that when defendants ordered the Muslim

18   prisoners to disperse, defendants were motivated by a retaliatory animus because plaintiff filed a

19   successful grievance in 2013.

20         Finally, as to the fifth factor, once a prisoner has pleaded the absence of legitimate

21   correctional goals for the conduct of which he complains, the burden shifts to defendants to show,

22   by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a

23   legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995).

24   In order to do this, courts should apply the four-factor test from *Turner v. Safley*, 482 U.S. 78

25   (1978), to determine whether the proferred legitimate penological interest is reasonably related to

26   a regulation which infringes on a prisoner's constitutional rights even in a retaliation analysis. *See*

*Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009).

Here, the evidence is undisputed that it appeared as if the Muslim prisoners were posting security, which is not permitted because of safety and security reasons. Because the court has already applied the *Turner* standard to plaintiff's free exercise claim, and determined that the curtailment of the July 25, 2014 evening congregational prayer was reasonably related to the prison's rule against "posting security," plaintiff cannot succeed on this fifth factor.

Alternatively, the court finds that defendants are entitled to qualified immunity on this claim as well. Even assuming that the law was clearly established that it was unlawful to retaliate against a prisoner for filing a grievance or receiving a favorable result from a grievance, a reasonable officer could believe that it was not unlawful to stop congregational prayer of at least 12-15 prisoners who posed a security concern because it looked as if they were "posting" security.

Accordingly, defendants' motion for summary judgment on plaintiff's retaliation claim is granted.

V.    Equal Protection Clause

Plaintiff alleges that defendants intentionally discriminated against plaintiff by refusing to allow plaintiff a reasonable opportunity to pursue Islam as compared to the opportunities provided to prisoners not of Islam faith.

Prisoners are protected by the Equal Protection Clause from intentional discrimination on the basis of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 514 F.3d at 884-85. To prevail on an equal protection claim under 42 U.S.C. § 1983, a plaintiff must plead and prove that "the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class." *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001), *quoting Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

The "intent" component of the discrimination requires a showing "the defendant acted at least in part *because of* the plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082

(9th Cir. 2003) (emphasis in original). In determining whether a discriminatory intent or purpose exists, the court "may consider direct evidence of discrimination, statistical evidence showing a discriminatory impact, or other factors that could reveal a discriminatory purpose, like the historical background of the policy." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1261 (9th Cir. 2016).

Here, plaintiff alleges that, beginning on June 28, 2014, Muslim prisoners were permitted to engage in evening congregational prayer without interruption from defendants or other prison officials until July 25, 2014. While plaintiff asserted in his complaint that on September 22, 2013, a group of about 25 Christian prisoners were offering evening congregational prayer and were not interrupted by a non-defendant correctional officer, plaintiff does not provide evidence that defendants knew about the Christian prisoner groups.

In sum, plaintiff has not come forward with evidence to raise a genuine issue of material fact that defendants' order to plaintiff and Muslim prisoners to disperse from their evening congregational prayer on July 25, 2014 was intentionally discriminatory, much less that such treatment was because of plaintiff's religion. Although plaintiff generally complains of differential treatment between Muslims and other faith groups, Ninth Circuit precedent states that because an equal protection claim requires proof of intentional discrimination, "[m]ere indifference" to the unequal effects on a particular class does not establish discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Plaintiff's conclusory allegations and mere assertions of discrimination against his religion are insufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56; *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). That is, plaintiff has "not . . . come forward with admissible evidence that, even viewed in the light most favorable to [him], demonstrates discriminatory intent." *Id.* at 1167. Without more, no constitutional claim can prevail.

Defendants' motion for summary judgment on plaintiff's equal protection claim is granted.

# VI.   RLUIPA

Plaintiff claims that defendants' actions violated the RLUIPA.  Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).

Defendants argue that plaintiff's RLUIPA claim fails because plaintiff has not demonstrated a "substantial burden."  Defendants further argue that defendants' one-time act moots any request for injunctive relief.  In addition, defendants argue that RLUIPA does not allow lawsuits against defendants in their individual capacities, and that RLUIPA does not allow for money damages against defendants in their official capacities.  The court addresses each argument in turn.

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'"  *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).  The RLUIPA substantial burden test is analyzed within the same Free Exercise Clause framework.  *See Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citing *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)).  "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Hartmann*, 707 F.3d at 1124-25 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

Here, the court has already determined that the plaintiff's allegations are insufficient to show a substantial burden in the First Amendment context. Based on that finding, the court concludes that plaintiff's RLUIPA claim fails as well.

In addition, plaintiff seeks injunctive relief as well as monetary damages. Defendants argue that plaintiff's RLUIPA claim for injunctive relief is moot because plaintiff's only challenge concerned defendants' interruption and cessation of one evening congregational prayer. Plaintiff conceded that his grievance concerning defendants' July 25, 2014 actions was granted, and that the Muslim prisoners have continued their evening congregational prayers with no issue. Case law is clear that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." Thus, because there is no allegation of ongoing RLUIPA violation, plaintiff has no basis for injunctive relief. *See Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (injunctive relief is only available if there is a real or immediate threat that the plaintiff will be wronged).

Finally, RLUIPA does not authorize suits against state actors, including prison officials, acting in their individual capacity. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). Claims may only be brought against such defendants in their official or governmental capacity. *Id.* at 904. However, the availability of money damages from state officials sued in their official capacity turns on whether the State has waived its Eleventh Amendment immunity from such suits, or congress has abrogated that immunity under its power to enforce the Fourteenth Amendment. *See Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1112 (9th Cir. 2010). The Ninth Circuit has held that California has not waived, and congress has not abrogated, state immunity with respect to monetary damage claims under RLUIPA. *Id.* at 1112-14. Consequently, RLUIPA does not authorize money damages against state officials, whether sued in their official or individual capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

For the above stated reasons, defendants' motion for summary judgment on plaintiff's

RLUIPA is granted.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.[4]  The clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: ___10/26/2017_____        _____
                                                        *Lucy H. Koh*
                                        LUCY H. KOH
                                        United States District Judge

---

[4] Because the court grants defendants' motion for summary judgment on the merits, the court finds it unnecessary to address defendants' additional arguments regarding plaintiff's requests for damages based on emotional distress and for punitive damages.

Case No. 15-CV-01739 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California